NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

GENE EVAN WILENCHIK, *Appellant.*

No. 1 CA-CR 17-0802
FILED 3-5-2019

Appeal from the Superior Court in Maricopa County
No. CR2015-147202-001
The Honorable William R. Wingard, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jennifer L. Holder
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Rena P. Glitsos
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge James P. Beene delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Kent E. Cattani joined.

---

**B E E N E**, Judge:

¶1        After having been found guilty of burglary and theft, Gene Evan Wilenchik ("Wilenchik") appeals his conviction and argues the superior court erred by permitting unduly prejudicial testimony at trial. For the reasons stated below, we affirm Wilenchik's convictions and sentences.

**FACTS AND PROCEDURAL HISTORY**

¶2        On October 2, 2015, a Circle K surveillance video captured an individual entering the store, moving behind the sales counter into an employee-only area, and putting cartons of cigarettes into a blue pouch. The store clerk, E.W., saw the individual remove the cartons and notified police via a 9-1-1 call.  Additionally, an off-duty police officer saw a person loading a "bag of some sort . . . into the [t]runk" of a vehicle located in the Circle K parking lot and then leave "at a high rate of speed." The off-duty officer notified police dispatch and provided a description of the vehicle.

¶3        Based on the Circle K surveillance video and knowledge of another investigation, Officers Molenkamp and Freyberger recognized the individual in the video and his vehicle, a gold Hyundai.  Officers used MVD records to confirm Wilenchik's identity, apartment address, and vehicle ownership.  E.W. subsequently identified Wilenchik from the surveillance video and a photo lineup as the person who took the items from the Circle K.

¶4        During a police interview, Wilenchik admitted he took approximately 13 cartons of cigarettes from behind the counter and put them in his car with the intent to sell them.  Wilenchik also admitted he was the person in the Circle K surveillance video and repeatedly stated he kept waiting for police to contact him about the October 2 incident.

¶5        The State charged Wilenchik with one count of burglary, a Class 4 felony, and one count of theft, a Class 6 felony.

¶6          During trial, Wilenchik first raised the issue of his prior police contact and requested "that previous contact [of Wilenchik with the police] should not be discussed."  In response, the State agreed to "sanitize" Officer Freyberger's testimony, but also asked the court not to "preclude mention of any previous contact," so that the State could explain how the police established Wilenchik's identity based on the surveillance video and the MVD records.  Because Officer Freyberger was not scheduled to testify until the next day, the trial proceeded without the court ruling on the issue.

¶7          Two officers subsequently testified and each mentioned the phrase "investigative lead" during his testimony.  The first statement referenced Wilenchik as "an investigative lead [in] another case."  The second statement mentioned Wilenchik as a named "investigative lead" as connected to the current case through a vehicle description.

¶8          After these statements were made, Wilenchik's counsel asked to approach the bench.  The parties discussed the content of the second statement and established that this testimony referenced the current case.  The court again declined to make a ruling and stated, "I don't think [the objection] needs a ruling[].  I understand your concern, and I'm sure [the State] is going to be very careful with [future verbiage]."

¶9          Later, outside the presence of the jury, Wilenchik's counsel requested "that the State not refer again to the issue of identification as far as this investigative lead."  The parties eventually agreed that the State's witnesses would testify that they "recognize[d] him from the neighborhood," rather than as an "investigative lead."  The trial concluded without further testimony referencing Wilenchik as an "investigative lead."

¶10          The jury found Wilenchik guilty as charged, and he was sentenced to nine years in prison.  Wilenchik timely appealed.  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

### I.          Wilenchik Preserved His Objection to the Officers' Testimony.

¶11          The State asserts that Wilenchik failed to preserve for appeal the issue of the officers' testimony pertaining to Wilenchik as an "investigative lead" and, therefore, our review is not subject to an abuse of discretion standard.  To claim an error on admission of evidence, a party must timely object or move to strike and also state a specific ground for the

objection. Ariz. R. Evid. 103(a). "[A] specific word is not required to make an objection or to preserve an issue for appeal." *State v. Foshay*, 239 Ariz. 271, 277, ¶ 27 (App. 2016) (citation omitted).

**¶12** Here, Wilenchik requested that his previous contact with the police not be discussed and objected to specific testimony that mentioned the contact. *Supra*, ¶¶ 6-9. Additionally, on multiple occasions, the parties discussed the implications of testimony relating to Wilenchik's prior police contact, and the State agreed to "sanitize" witness testimony on this issue. *Supra*, ¶¶ 6, 8.

**¶13** Thus, the record provides sufficient evidence that Wilenchik raised the issue. Therefore, we review the admission of prior act evidence under Rule 404(b) for abuse of discretion. *State v. Scott*, 243 Ariz. 183, 187, ¶ 14 (App. 2017) (citations omitted).

## II.    The Court Properly Admitted the Officers' Testimony.

**¶14** Generally, Rule 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible to prove conformity with a character trait but may be admissible for other purposes, such as proving identity. Ariz. R. Evid. 404(b). "The purpose of Rule 404(b) is to keep from the jury evidence that the defendant is prone to commit crimes or is otherwise a bad person." *State v. Hardy*, 230 Ariz. 281, 289, ¶ 34 (2012) (citation omitted). Moreover, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Ariz. R. Evid. 403.

**¶15** Here, Wilenchik claims he was prejudiced by the testimony that he was an "investigative lead." One officer, however, testified that Wilenchik was a named "investigative lead" in the current case. This statement does not relate to "*other* crimes, wrongs, or acts" and is not covered by Rule 404(b). (Emphasis added.) The other officer mentioned that the vehicle in the current case "kind of reminded [him] of another vehicle where there was an investigative lead from another case."

**¶16** This testimony, however, was presented to rebut Wilenchik's "mistaken identity" defense and show that Wilenchik was the individual depicted in the Circle K surveillance video. *See State v. Padilla*, 122 Ariz. 378, 379 (1979) (holding the testimony about the defendant's prior drug contacts with an undercover officer was admissible under Rule 404(b) because he had "given notice of a defense of mistaken identity" and the evidence "tended to prove the accuracy of the identification of [the defendant] by the officers"); *State v. Lamar*, 144 Ariz. 490, 497 (App. 1984)

("However, evidence of prior bad acts, another offense or misconduct, is admissible to show the complete story even though other prejudicial facts are revealed thereby."). Thus, this testimony was admissible under Rule 404(b).

¶17 Wilenchik also claims that, in establishing identity, the witnesses testified to additional information that was unfairly prejudicial. The court has discretion to exclude otherwise admissible evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Ariz. R. Evid. 403. "The danger to be avoided by excluding evidence of other offenses is that the jury may conclude that the defendant is a 'bad man' and convict on lesser evidence than would ordinarily be necessary to support a conviction." *State v. Brown*, 125 Ariz. 160, 161 (1980) (quoting *State v. Babineaux*, 22 Ariz. App. 322, 325 (App. 1974)). However, "not all harmful evidence is unfairly prejudicial," *State v. Shurz*, 176 Ariz. 46, 52 (1993), and, although "evidence that makes a defendant look bad may be prejudicial in the eyes of jurors, it is not necessarily unfairly so," *State v. Guarino*, 238 Ariz. 437, 440, ¶ 9 (2015) (citation omitted).

¶18 Here, the questioned testimony linked the description of the vehicle in the current case to a vehicle description that was an investigative lead in another case. Such a vague, unproven link to a vehicle, rather than to a person, and without an indication that the investigative lead related to a similar crime, would not encourage the jury to assume Wilenchik was "a 'bad man' and [therefore] convict on lesser evidence." *See Brown*, 125 Ariz. at 161. Accordingly, the superior court did not abuse its discretion in permitting this testimony. *See State v. Jones*, 197 Ariz. 290, 305, ¶ 34 (2000) (recognizing that "testimony about prior bad acts does not necessarily provide grounds for reversal").

¶19 Moreover, any arguable error in permitting the testimony at issue was harmless. The reference to a vehicle being similar to a vehicle where there was an investigative lead from another case was not repeated or emphasized, and was not otherwise used to establish guilt. Indeed, here there was overwhelming evidence of guilt: two eye witnesses to the offense, a surveillance video, and Wilenchik's own inculpatory statements. *Supra*, ¶¶ 2-4. Accordingly, any possible error was harmless.

**CONCLUSION**

**¶20**      For the foregoing reasons, we affirm Wilenchik's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:  AA